**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:18 CV 26**

| | | |
|---|---|---|
| **FRANK J. AMAVISCA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER** |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for summary judgment (# 10,

14). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the

final decision by the Commissioner of Social Security ("Commissioner") denying his claims for

disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For

the reasons set forth below, Plaintiff's motion for summary judgment is DENIED, and the

Commissioner's motion for summary judgment is GRANTED.

**I.      Procedural History**

On February 14, 2014, Plaintiff filed a Title II application for a period of disability and

disability insurance benefits. (Transcript of Administrative Record ("T.") 24.) On March 3, 2014,

Plaintiff filed a Title XVI application for supplemental security income. (T. 24.) In both

applications, Plaintiff alleged a disability onset date of May 13, 2013. (T. 24.)

On February 14, 2014, Plaintiff's claims were denied initially, and they were denied upon

reconsideration on August 22, 2014. (T. 24.) On October 13, 2014, Plaintiff filed a written request

for hearing. (T. 24, 154-55, 168.) Plaintiff objected to a video teleconference hearing. (T. 168.)

On December 12, 2016, an in-person hearing was held in Charlotte, North Carolina, and

Plaintiff appeared and testified. (T. 24.) At the hearing, attorney James Franklin Mock, II represented Plaintiff. (T. 24.) Ellen Levine, a vocational expert ("VE"), was also present at the hearing. (T. 24.)

On March 17, 2017, the ALJ issued a decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 24, 2013, through the date of the ALJ's decision, March 17, 2017. (T. 34.) Plaintiff requested review of the ALJ's decision. (T. 6.) The Appeals Council denied Plaintiff's request for review. (T. 6-8.) On February 8, 2018, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1).

## II.     Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or medically equal the severity of one or more of the listing of impairments contained in Appendix 1 of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled, and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five by using the testimony of a VE, who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

## III.    The ALJ's Decision

In her March 17, 2017 decision, the ALJ ultimately found that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (T. 34.) In support of this conclusion, the ALJ made the following specific findings:

(1)    The claimant met the insured status requirements of the Social Security Act through December 31, 2015.

(2)    The claimant has not engaged in substantial gainful activity since May 24, 2013, his amended alleged onset date (20 C.F.R. § 404.1571 et seq. and § 416.971 et seq.).[1]

(3)    The claimant has the following severe impairments: lumbar degenerative disc disease, degenerative joint disease of the left hand, obesity,[2] and hypertension (20 C.F.R. §§ 404.1520(c), 416.920(c)).[3]

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).[4]

(5)    The claimant has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except he is limited to never climbing ladders, ropes or scaffolds; occasional climbing ramps and stairs; occasional stooping; frequent handling (gross manipulation) with the left hand; and frequent exposure to hazards.[5]

(6)    The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).[6]

---

[1] On November 23, 2016, Plaintiff's counsel moved to amend his disability onset date from January 30, 2012 to May 24, 2013. (T. 225.)

[2] Plaintiff has weighed at least 180 to 200 pounds, and his height is 67 inches. (T. 27, 70.) At Plaintiff's hearing, he reported that he was 5'6" and weighed "about 195." (T. 44.) Plaintiff's obesity was evaluated in a manner that is consistent with Social Security Ruling 02-1p. See (T. 31.) The ALJ noted that Plaintiff's weight contributes to his back pain, but it does not preclude all work activity. (T. 31.)

[3] The ALJ found that Plaintiff's headaches and depression do not cause more than a minimal limitation in his ability to perform basic work activities. (T. 27.)

[4] The ALJ specifically looked at the following Listings: 1.04, 1.02B, and 4.02. (T. 28-29.)

[5] The regulations define a full range of medium work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[6] The ALJ found that Plaintiff had past relevant work as a metal fabricator (Dictionary of Occupational Titles 619.361-014), which is a heavy job. (T. 32.) As noted, the ALJ found that Plaintiff could perform a limited range of medium work. (T. 29.)

4

(7)     The claimant was born on June 11, 1957, and he was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 C.F.R. §§ 404.1563, 416.963).

(8)     The claimant has at least a high school education, and he is able to communicate in English (20 C.F.R. §§ 404.1564, 416.964).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether the claimant has transferable job skills (See Social Security Ruling[7] ("SSR") 82-41 and 20 C.F.R. 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).[8]

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2013, through the date of the ALJ's decision, March 17, 2017 (20 C.F.R. §§ 404.1520(g), 416.920(g)).

(T. 24-34.)

## IV.     Standard of Review

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[7] Social Security Rulings "represent precedential final opinions and orders and statements of policy and interpretations" that have been adopted by the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

[8] The ALJ testified that someone with Plaintiff's RFC could perform the following representative jobs: (1) warehouse worker, which is a medium job with approximately 91,000 jobs in the national economy; (2) laundry work, which is a medium job with approximately 397,000 jobs in the national economy; and (3) machine feeder, which is a medium job with approximately 40,00 jobs in the national economy. (T. 33, 64-65.)

Craig, 76 F.3d at 589 (internal quotation marks omitted).  It is more than a scintilla but less than a preponderance of evidence.  Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary."  Id.  Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he was not disabled is supported by substantial evidence in the record, and whether the ALJ reached her decision based on the correct application of the law.  Id.

## V.    Discussion[9]

### A.    The ALJ properly evaluated Dr. Morris's opinion.[10]

In Plaintiff's first assignment of error, he notes that Dr. Morris opined that he would can sit, stand, or walk for a maximum of six hours "with perhaps frequent breaks."  Pl.'s Mem. (# 11) at 10.  Plaintiff further notes that the ALJ acknowledged Dr. Morris's opinion that Plaintiff may require "frequent breaks" to sit, stand, or walk for six hours.  Id.  Plaintiff argues that the ALJ did not include this specific limitation in her RFC finding or provide reasons for rejecting it.  Id.  Plaintiff concludes that this Court should reverse the Commissioner's decision and remand this case for further proceedings.  Id. at 21.

A review of the record reveals the following:  On April 26, 2014, Plaintiff was examined in Statesville, North Carolina by Peter Morris, M.D., a consultative examiner.  (T. 365.)  Plaintiff's

---

[9] This opinion reflects the Code of Federal Regulations as it stood on the relevant date, which is the date of the ALJ's decision:  March 17, 2017.  See (T. 34.)

[10] Plaintiff contends that "Dr. Morris was the only source who had the opportunity to evaluate [Plaintiff] and offer an opinion on how his impairments would limit his functioning."  Pl.'s Mem. (# 11) at 11.  Defendant represents that she is not aware that other sources did not have the opportunity to evaluate Plaintiff and opine on his functional capacity.  Def.'s Mem. (# 15) at 4 n.2.  The ALJ specifically found that "[n]one of the claimant's treating physicians have imposed specific functional limitations."  (T. 31.)  Plaintiff does not dispute this finding.  See Pl.'s Mem. (# 15).

chief complaint was his back. (T. 365.) Plaintiff reported pain all the time, but medication helped with his pain. (T. 366.) Plaintiff can take care of personal needs without any assistance, including bathing, dressing, toileting, and eating. (T. 366.) Plaintiff can also cook meals and wash dishes some days. (T. 366.) Plaintiff can vacuum and mop, but he cannot do yard work. (T. 366.)

Dr. Morris diagnosed Plaintiff as suffering with chronic low back pain, chronic left thumb pain, chronic left shoulder pain, chronic neck pain, hypertension, and depression. (T. 370.) Dr. Morris concluded that Plaintiff was well developed, well nourished, and in no acute distress. (T. 367.) Plaintiff sat comfortably during the interview and examination. (T. 368.) Plaintiff was able to ambulate without assistance, get on and off the examination table without assistance, and take of his shoes without assistance. (T. 368.) Dr. Morris believed Plaintiff "did not seem to give an adequate effort through much of the exam." (T. 368.) Dr. Morris noted that Plaintiff did not use an assistive device. (T. 369.)

Dr. Morris opined that Plaintiff could stand/walk/sit for six hours "with perhaps frequent breaks." (T. 370.) An assistive device was not medically necessary. (T. 370.) Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. (T. 370.) Plaintiff could do postural activities occasionally to frequently. (T. 370.) Plaintiff might have some manipulative limitations using his left hand. (T. 370.) Plaintiff had no manipulative limitations on the right hand. (T. 370.) An environmental limitation might be working at heights based on Plaintiff's chronic pain and tenderness. (T. 370.)

A review of the ALJ's decision reveals that she generally summarized Dr. Morris's findings. (T. 30-31.) The ALJ ultimately gave "some weight" to Dr. Morris's opinion. (T. 31.) The ALJ noted that Dr. Morris opined that Plaintiff was able to stand/walk/sit for 6 hours with frequent breaks. (T. 31.) The ALJ also noted that Dr. Morris's opinion was consistent with

medium exertional work with the ability to frequently manipulate on the left, no limitation on the right, and limited work at heights. (T. 31.) The ALJ explained that she did not give Dr. Morris's opinions "great weight" because the physician evaluated Plaintiff only one time.[11] (T. 31.)

Even if the ALJ gave "great weight" to Dr. Morris' opinions, she did not necessarily commit error by failing to adopt <u>every</u> aspect of Dr. Morris's opinions. <u>See</u> <u>Queen v. Berryhill</u>, No. 1:16-cv-00175-MR, 2017 WL 4158648, at *8 (W.D.N.C. Sept. 19, 2017) ("The fact that the ALJ gave great weight to Dr. Barnes's opinion, however, does not imply that the ALJ adopted every aspect of Dr. Barnes's report."). Moreover, the ALJ is not required to produce a perfect opinion. <u>See</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [the Court] to remand a case in quest of a perfect opinion[.]").

Finally, Plaintiff argues that "[t]he ALJ was not free to substitute her own medical conclusion for that of Dr. Morris." Pl.'s Mem. (# 11) at 11. Plaintiff relies on <u>Lewis v. Berryhill</u>, 858 F.3d 858 (4th Cir. 2017), which held that "the ALJ's designation of [the Plaintiff's] course of treatment as 'conservative' amounts to improperly 'playing doctor' in contravention of the requirements of applicable regulations." Pl.'s Mem. (# 11) at 11 n.65 (citing <u>Lewis</u>, 585 F.3d at 869). The Court is not persuaded.

The limitation that Plaintiff would require "perhaps frequent breaks" is vague.[12] If the ALJ had attempted to implement this specific limitation, a strong argument could easily have been made that the ALJ was speculating. Moreover, it is the ALJ's responsibility to assess a claimant's

---

[11] <u>See</u> C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2) (recognizing that the opinion of an examining source is entitled to more weight than a non-examining source, and a treating source gets more weight because they are likely to provide a longitudinal view of the claimant's medical impairment(s)).

[12] Here, the ALJ had no duty to re-contact Dr. Morris. <u>See</u> 20 C.F.R. §§ 404.1519p(b), 416.919p(b) (providing that the ALJ's duty to re-contact a consultative examiner arises when the examiner's report is "inadequate or incomplete").

RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c) (recognizing that responsibility for the RFC assessment at the hearing level rests with the ALJ); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-31 (4th Cir. 2011) (per curiam) (RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record.").

In sum, the ALJ did not commit legal error, and her decision is supported by substantial evidence. See Craig, 76 F.3d at 589 (recognizing that the District Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through the application of the correct legal standard.").

## B. The ALJ properly evaluated Plaintiff's mental impairment.

Next, Plaintiff argues that the ALJ was required to consider the cumulative effect of his impairments, which included depression. Pl.'s Mem. (# 11) at 13. Plaintiff further argues that the ALJ erred by failing to explain whether Plaintiff's mild limitations amounted to an actual limitation in the RFC. Id. at 15. Finally, relying on Ashcraft v. Colvin, No. 3:13-CV-00417-RLV-DCK, 2015 WL 9304561 (W.D.N.C. Dec. 21, 2015), Plaintiff argues that the ALJ's error was not harmless. Id. Plaintiff concludes that this Court should reverse the decision of the Commissioner and remand this case for further proceedings. Id. at 21.

The ALJ found that Plaintiff's depression does not cause more than a minimal limitation, and therefore, Plaintiff's depression is a nonsevere impairment.[13] (T. 27.) Plaintiff does not challenge this finding. See Pl.'s Mem. (# 11). Therefore, the Court deems the argument waived, and it will not be addressed herein. With respect to the "paragraph B" criteria,[14] the ALJ concluded

---

[13] A nonsevere impairment is an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).

[14] The paragraph B criteria in effect on March 17, 2017, the date of the ALJ's decision, consist of the following: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself. Maynard v. Berryhill, No. 2:17-cv-04131, 2018 WL 4659344,

that Plaintiff's medically determinable mental impairment causes no more than a mild limitation in any of the functional areas.  (T. 27-28.)  The ALJ specifically found:

> The claimant has no more than <u>mild</u> limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting or maintaining pace.  He has no limitations in adapting or managing oneself.

(T. 27) (emphasis added).

Plaintiff argues that "[t]he ALJ failed to accommodate or reject [his] mental symptoms in the RFC."  Pl.'s Mem. (# 11) at 11.  Plaintiff's argument arises from <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015).  In <u>Mascio</u>, the Fourth Circuit Court of Appeals held that limitations in concentration, persistence, or pace cause work-related limitations with staying on task, and while the ALJ may find that no limitations are required, an explanation is necessary.  <u>Id.</u> at 638.  The Fourth Circuit further held:

> Perhaps the ALJ can explain why [the Plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the Plaintiff's] [RFC].  For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the Plaintiff's ability to work, in which case it would have been appropriate to exclude it for the hypothetical tendered to the [VE].  But because the ALJ gave no explanation, a remand is in order.[15]

<u>Id.</u> (internal citation omitted, and footnote added).

This Court previously addressed the issue presented in <u>Roberson v. Colvin</u>, No. 3:15-cv-00570-MOC, 2016 WL 5844148 (W.D.N.C. Oct. 4, 2016).  In <u>Roberson</u>, this Court held:

> [T]his case is distinguishable from <u>Mascio</u>, which dealt with a finding of "moderate" limitations, not mild limitations as plaintiff suffers here.  <u>Mascio</u>, 780 F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in

---

at *4 n.2 (W.D. Va. Sept. 28, 2018) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

[15] In <u>Ponder v. Berryhill</u>, No. 1:15-CV-00289-RJC, 2017 WL 1246350 (W.D.N.C. Mar. 31, 2017), a Court in this District held, "<u>Mascio</u> only requires a remand when an ALJ's opinion is sorely lacking in a manner that frustrates meaningful review.  <u>Id.</u> at *4 (quoting <u>White v. Colvin</u>, No. 3:15-CV-00197-FDW, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016) (quotation omitted)).

concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity."). As this case concerns only "mild difficulties," it does not trigger the RFC discussion requirements of Mascio per se.

2016 WL 5844148, at *6; see also Hardy v. Berryhill, No. 3:16-CV-00746-FDW, 2018 WL 1385412, at *5 (W.D.N.C. Mar. 19, 2018) ("[T]his case is distinguishable from Mascio, which dealt with a finding of 'moderate' limitations, not mild limitations as Plaintiff suffers here.") (collecting cases in this District holding that a mild limitation does not implicate the Mascio requirements).

In passing, Plaintiff asserts that the ALJ noted that Plaintiff had no difficulty over the phone with a claims representative. Pl.'s Mem. (# 11) at 13. Plaintiff argues that "[t]here is no explanation in the form relied upon by the ALJ of what criteria was used by the [Social Security Administration] representative or how these responses were reached." Id. at n.70. The Court is not persuaded.

A review of the ALJ's decision reveals that when addressing the ALJ's paragraph B criteria, the ALJ noted that "[i]n support of these conclusions, the undersigned notes that the claims representative noted no difficulties over the phone." (T. 27.) The record reveals that, on March 3, 2014, Plaintiff engaged in a telephone conversation with interviewer "T. Nance." (T. 235-36.) "T. Nance" noted that Plaintiff had no difficulty with the following: hearing, reading, breathing, understanding, coherency, concentrating, talking, and answering. (T. 236.)

The Court agrees with Plaintiff that this evidence is of limited value. That having been said, the ALJ's paragraph B findings are supported by substantial evidence. For example, the ALJ relied upon a psychological consultative examination conducted on April 17, 2014. (T. 27.) The psychological examiner found that Plaintiff was adequately

groomed, and his motor activity was normal. (T. 27.) Plaintiff reported no significant depressed mood, anxiety, or trouble handling emotional issues. (T. 27.) Plaintiff denied significant or reduced level of mood, concentration, or sense of apathy or negativity. (T. 27.) Plaintiff has never been diagnosed with an emotional impairment or treated for depression by a doctor. (T. 27.)

Plaintiff does not often go out in social situations, but he gets along well with others and does not have a significant dispute with anyone. (T. 27.) Plaintiff stated that he washes, cooks, cleans, shops, and does laundry. (T. 27.) Plaintiff enjoys gun and stamp collecting. (T. 27.) Plaintiff was cooperative during his exam and smiled and joked with the examiner. (T. 27.) Plaintiff exhibited adequate motivation and energy level. (T. 27.) Plaintiff had "some" impairment in immediate auditory retention and delayed recall for objects. (T. 27.) Otherwise, Plaintiff's attention, concentration, recall, memory, and mental flexibilities were within normal limits. (T. 27.) Plaintiff had no difficulties in understanding and responding to questions and statements. (T. 27.) "[Plaintiff's] mood was cheerful, upbeat and stable." (T. 27.)

Mr. Lorence, a licensed psychological associate, found that Plaintiff did not suffer from any overt cognitive deficits besides mild immediate auditory recall and delayed recall for objects.[16] (T. 27-28.) Plaintiff has no history of mental health problems. (T. 28.) Plaintiff was able to perform simple, repetitive, and routine tasks that do not require demanding or intensive physical labor. (T. 28.)

---

[16] Mr. Lorence was working under the supervision of Dr. Reavis, a licensed psychologist. (T. 27-28.)

There is no reason to believe that Plaintiff's non-severe depression would warrant functional limitations greater than customary breaks and time off task. The VE testified that, generally, an employee would be permitted a 15-minute break in the morning, a 30-minute break at lunch, a 15-minute break in the afternoon, and one or two 5- or 10-minute bathroom breaks. (T. 65.) In addition, the VE testified that it would generally be permissible for an individual to be off task 10 percent of the workday.[17] (T. 65-66.)

Plaintiff was present and represented by attorney Franklin Mott at the December 12, 2016 hearing before ALJ Susan Poulos in Charlotte, North Carolina. See (T. 40). Although given ample opportunity to do so, neither Plaintiff nor his counsel argued that Plaintiff suffered functional limitations because of a mental impairment. See (T. 40-68.)

Finally, relying on Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656 (4th Cir. 2017), Plaintiff concedes that Mascio dealt with more severe mental limitations, but Plaintiff summarily argues that the ALJ has a duty to show his work. Pl.'s Mem. (# 11) at 14. Plaintiff further argues that the ALJ failed to fulfill this duty. Id.

This argument must fail because Patterson is factually distinguishable from the instant case. In Patterson, the Fourth Circuit addressed a Social Security case where the ALJ utterly failed to give the necessary explanations about how he reached the conclusions

---

[17] Plaintiff contends that the ALJ committed harmful error on the basis that the VE testified that an individual's need to be off task for 20 percent of the time would preclude competitive employment. Pl.'s Mem. (# 11) at 15 (citing T. 60-61). Plaintiff, however, must demonstrate that there is evidence to support the limitation at issue. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (recognizing that the claimant bears the burden of proof at steps one through four.) Plaintiff contends that "it is possible . . . that if the limitations arising from [his] depression were incorporated into the RFC assessment, there would be no work that he could perform." Pl.'s Mem. (# 11) at 15. Plaintiff fails to identify those specific limitations and show how they are supported by the evidence of record. Therefore, Plaintiff has not met his burden of proof.

regarding the severity of the Plaintiff's mental impairment. 846 F.3d at 662. The Fourth Circuit Court of Appeals responded by directing ALJ's to "[s]how your work." Id. at 663.

In the instant case, as noted above, the ALJ addressed the evidence surrounding Plaintiff's mental impairment at length. (T. 27-28.) The ALJ explained how she reached her conclusion regarding the severity of Plaintiff's depression. (T. 27-28.) Importantly, Plaintiff has failed to point to any evidence not addressed by the ALJ that would arguably support a functional limitation not included in the mental RFC finding. See Pl.'s Mem. (# 11); see also Robinson v. Berryhill, No. 3:16-cv-866, 2018 WL 1718262, at *3 (W.D.N.C. Apr. 9, 2018) (finding that Patterson was distinguishable because "the ALJ adequately explained how Plaintiff's limitations in social functioning impact her RFC and ability to work.").

In sum, the ALJ considered Plaintiff's RFC in a manner that was consistent with the Fourth Circuit's holding in Mascio, and the ALJ's evaluation of Plaintiff's mental impairment is supported by substantial evidence. See Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012) ("When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.").

**C.      The ALJ properly evaluated Plaintiff's symptom testimony.**

In Plaintiff's second assignment of error, he contends that SSR 16-3p requires the ALJ to provide specific reasons for the weight afforded to a claimant's symptom testimony, and the reasons provided by the ALJ were neither specific nor supported by substantial evidence. Pl.'s

Mem. (# 11) at 15-16. Plaintiff argues that when an ALJ rejects a claimant's symptom testimony without providing specific reasons, the decision is not supported by substantial evidence. Id. at 15-16. Plaintiff concludes that this Court should reverse the decision of the Commissioner and remand this case for further proceedings. Id. at 21.

SSR 16-3p,[18] effective March 28, 2016,[19] addresses the "Evaluation of Symptoms In Disability Claims." See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). The Ruling "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." Id. at *1. The term "credibility" was eliminated from SSR 96-7p because "subjective symptom evaluation is not an examination of an individual's character." Id.

A two-step process is employed for evaluating a claimant's symptoms. Id. at *3. Pursuant to step one, the Social Security Administration will assess whether the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. Id. A claimant will not be found disabled based on alleged symptoms alone. Id. at *4.

Under the second step, the Social Security Administration will evaluate the intensity and persistence of the claimant's symptoms, such as pain, to determine the extent to which the claimant's symptoms limit his ability to perform work-related activities. Id. In addition to looking at all the evidence to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms, the Social Security Administration will also look to the following:

---

[18] SSR 96-7p was superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), which is applicable to ALJ decisions issued on or after March 28, 2016. As noted, the instant ALJ decision was issued on March 17, 2017. See (T. 34).
[19] SSR 16-3p states that it was effective March 16, 2016, 2016 WL 1119029, at *1, but the effective date was later corrected to March 28, 2016, 2016 WL 1237954, at *1 (Mar. 24, 2016).

(1) Daily activities;

(2) The location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any other measures used to relieve pain or other symptoms (e.g., lying flat on your back,   standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

Id. at *7.

In the instant case, the ALJ found as follows regarding Plaintiff's symptoms:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(T. 29-30.)  As explained below, the ALJ's two-step determination is consistent with the relevant regulations, see 20 C.F.R. §§ 404.1529, 416.929; SSRs, see SSR 16-3p; and case law, see Craig, 76 F.3d at 595.  Moreover, the ALJ cites substantial evidence in support of this determination.

Plaintiff generally argues that the reasons provided by the ALJ are not sufficiently specific and are not supported by substantial evidence.  Pl.'s Mem. (# 11) at 16-20.  First, Plaintiff contends that the ALJ failed to support her "sit and squirm" observations with objective findings.  Id.  17.

In Shively v. Heckler, 739 F.2d 987 (4th Cir. 1984), the Fourth Circuit Court of Appeals concluded that an ALJ's observations are entitled to "great weight" on the basis that "he had the opportunity to observe the demeanor and to determine the credibility of the claimant."  Id. at 989.  A few years later, in Lewis v. Bowen, 823 F.2d 813 (4th Cir. 1987), the Fourth Circuit concluded that "allow[ing] a claimant's appearance at a hearing or medical evaluation to govern a finding on personal habits would be akin to applying a 'sit and squirm' jurisprudence to claimants who allege disability based on pain."[20]  Id.  at 816.  SSR 16-3p provides that "[t]he [ALJ] will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."  2017 WL 5180304, at *7.

In the instant case, the ALJ noted that "[t]he claimant testified that he cannot sit more than 15 minutes.  Yet, he remained seated without difficulty for approximately 40 minutes at the hearing."  (T. 30.)  The ALJ further noted that "[t]he claimant said his hands bother him, but he moved them frequently while talking at the hearing."  (T. 30.)

The ALJ's remarks do not amount to impermissible "sit and squirm" findings because the ALJ supported her findings with substantial evidence.  By way of example, in support of her observations, the ALJ noted the following:  In April 2014, Plaintiff complained of acute lumbar back pain, but his musculoskeletal examination was normal other than for lumbar tenderness and

---

[20] Shively has not been expressly overruled by the Fourth Circuit Court of Appeals.

antalgic posturing. (T. 30.) Plaintiff testified that he is disabled due to back pain from a motor vehicle accident 25 years ago. (T. 30.) The ALJ noted that this was inconsistent with the fact that he continued to work for many years thereafter at a <u>heavy</u> job.[21] (T. 30.) Additionally, Plaintiff told Dr. Morris in April 2014 that he had last worked in January 2012, and he left the job after working full-time when the shop closed, and he was laid off. (T. 30.)

Plaintiff's primary complaint is his back, yet examinations reveal 4+/5 and 5/5 strength in his upper and lower extremities. (T. 30.) In April 2014, Dr. Morris noted that Plaintiff was able to open a water bottle, pick up a paperclip off the desk, hold a pen, turn a door knob, and manipulate a button with his left hand. (T. 30.) Plaintiff also had a full range of motion of the wrist, finger/thumb joints. (T. 30.)

As this Court has previously noted, "there is nothing inherently wrong with an ALJ noting observations she made during a hearing concerning impairments that have an objective aspect, such as hearing loss, especially where those observations are supported by other medical evidence of record consistent with those observations." <u>Cain v. Berryhill</u>, No. 5:17-CV-48-MOC, 2017 WL 6419299, at *5 (W.D.N.C. Dec. 15, 2017).

In the instant case, the ALJ's assessment of Plaintiff's subjective complaints involves several factors. Consequently, the Court finds no error. <u>See</u> <u>Shively</u>, 739 F.2d at 989 ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.").

---

[21] The regulations define heavy work as follows: "Heavy work involves lifting objects weighing no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. §§ 404.1567(d), 416.967(d).

Second, Plaintiff contends that the ALJ failed to explain the relevance of Plaintiff's ability to work prior to his onset date of disability. Pl.'s Mem. (# 11) at 18. A review of the ALJ's decision reveals that she found, in pertinent part, as follows:

> The claimant testified that he is disabled because of back pain caused by a motor vehicle accident that happened 25 years ago. The undersigned finds this inconsistent with the fact that the claimant continued to work thereafter for many years at a heavy job.

(T. 30.) Plaintiff declines to mention it, but immediately after this quoted portion of the ALJ's decision, the ALJ noted that "[f]urther, [the claimant] told Dr. Morris in 2014 that he had last worked in January 2012, and left his job after working full-time as a metal fabricator when the shop closed down and he was laid off." (T. 30, 366.)

The point the ALJ is attempting to make, and does make, is that the motor vehicle accident, itself, was not disabling. In fact, Plaintiff worked a <u>heavy</u> job for numerous years after the accident. Moreover, Plaintiff has failed to direct the Court to evidence in support of his claim that his functional capacity dramatically decreased after May 24, 2013, Plaintiff's amended alleged onset date. <u>See</u> Pl.'s Mem. (# 11).

Plaintiff argues that [t]here is no evidence to suggest that [his] back pain was not, in part, the basis for his application for benefits." Pl.'s Mem. (# 11) at 18. The ALJ did not suggest that Plaintiff's back pain was not the basis for his application of benefits. <u>See</u> (T. 24-34). Moreover, it was not improper for the ALJ to consider Plaintiff's work history. <u>See</u> <u>Smith v. Berryhill</u>, No. 3:17-CV-612, 2018 WL 3747287, at *6 (W.D.N.C. Aug. 7, 2018) ("[I]t was not error for the ALJ to consider and cite to plaintiff's work history as evidence in her decision, as that evidence constitutes a 'prior work record.'"); <u>Dennis v. Berryhill</u>, No. 2:17CV529, 2018 WL 3432544, at *12 (E.D. Va. June 20, 2018) ("In short,

work history is just one of the many factors an ALJ can consider if it is relevant to his determination of the claimant's credibility."); see also Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) (recognizing that work history is merely one of many factors properly considered when assessing credibility).

Third, Plaintiff argues that the ALJ failed to consider his lack of insurance and inability to afford treatment as barriers to receiving ongoing medical treatment.  Pl.'s Mem. (# 11) at 18.  Plaintiff's argument is belied by the record.  The ALJ's decision specifically states that "[t]he claimant testified that he has no other treatment other than the free medical clinic because he has no insurance."  (T. 31.)  Accordingly, the Court finds no error.

Fourth, Plaintiff argues that his activities of daily living do not show that he was more capable than he testified or that he could perform substantial gainful activity.  Pl.'s Mem. (# 11) at 20.  Activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations.  Dolfax v. Astrue, No. 7:09-cv-67-FL, 2010 WL 1488116, at *11 (E.D.N.C Mar. 18, 2010) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam)); see Mastro, 270 F.3d at 179 (concluding that the ALJ correctly applied the law by determining that a claimant's reported daily activities undermined their subjective complaints).  An ALJ must consider the difference between a claimant's being able to engage in sporadic physical activities and being able to work eight hours a day for five consecutive days in a week.  Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004).

In the instant case, in pertinent part, the ALJ found as follows:

In 2014, the claimant reported that he took care of his personal needs without assistance, cooked, washed dishes, vacuumed, and mopped.  [The claimant]

testified that he lives with his roommate who is disabled. The claimant said he thought she has seizures, and he stays with her to "keep an eye on her." He noted that he drove to the hearing. The claimant reported that he prepares things to eat, uses the computer and watches television. The ability to engage in such activities are inconsistent with his allegations of debilitating pain and his inability to perform such regular movements as bending, sitting, walking, grasping, or maintaining attention.

(T. 31) (internal record citation omitted). The ALJ simply considered Plaintiff's activities of daily living as one factor among many in evaluating Plaintiff's subjective complaints.[22] See (T. 29-31). Consequently, the Court finds no error.[23]

Fifth and finally, Plaintiff concludes that the ALJ's error in weighing his testimony was not harmless error. Pl.'s Mem. (# 11) at 21. As noted above, the Court finds no error. Therefore, this argument is rendered moot.

## VI. Conclusion

Considering the foregoing, Plaintiff's motion for summary judgment (# 10) is DENIED, and the Commissioner's motion for summary judgment (# 14) is GRANTED.

Signed: November 1, 2018

Max O. Cogburn Jr.
United States District Judge

---

[22] Plaintiff has not put forth any evidence other than his own testimony that conflicts with the ALJ's conclusion that he could perform a limited range of medium work. See Pl.'s Mem. (# 11); see also Dugger v. Colvin, No. 5:15-cv-00020-MOC, 2015 WL 6455390, at *8 (W.D.N.C. Oct. 26, 2015) ("Plaintiff has not offered the court any evidence in the record other than his own testimony, which the ALJ found to be only partially credible, that calls into question his ability to perform work activities at all levels determined by the ALJ.").

[23] See Gross, 785 F.2d at 1166 (upholding a finding of no disability where the claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); Smith-Brim v. Colvin, No. PMJ 14-683, 2015 WL 4724977, at *15 (D. Md. Aug. 7, 2015) (upholding a finding of no disability where "Plaintiff reported activities involving crocheting, reading, spending time with family, watching television news programs, and using a computer for social networking and email").